IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW SCOTT ZINER, | : |
| | :   CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| CEDAR CREST COLLEGE | : |
| | :   NO. 04-3491 |
| Defendant. | : |

MEMORANDUM AND ORDER

Currently pending before the Court is Defendant's Motion to Quash or Motion for a Protective Order under Federal Rule of Civil Procedure 26(c). For the reasons which follow, the Court will grant this motion.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying this case involve multiple claims of gender discrimination by plaintiff, Andrew Scott Ziner, against his employer, Cedar Crest College, under Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, the Equal Pay Act and a standard breach of contract theory. By way of his lengthy complaint, petitioner specifically alleges that the upper level administration at the college repeatedly engaged in various discriminatory acts against him resulting in a hostile work environment, a disparity in pay with his female counterparts and a loss of promotion opportunities.

During discovery in this matter, defendant provided plaintiff with the investigative report of Wendy Schermer, an attorney who was hired by the college to investigate the unrelated complaint of a Dr. Judi Simons. Dr. Simons, a former female faculty member of the defendant college,

suddenly resigned her position in February 2004. The following April, she brought a complaint to the attention of Cedar Crest College, indicating that her resignation was a direct result of the acts of Provost Cynthia Metzler, which resulted in workplace harassment. In part, Dr. Simons raised a specific complaint about the "grumpies," a group of present and former female faculty members who she felt were sexually discriminatory. Ms. Schermer's investigative report of Dr. Simons's complaints addressed this particular issue.

Thereafter, on March 10, 2006, plaintiff issued a subpoena *duces tecum* to Ms. Schermer, seeking to compel production of the following:

> All documents associated with the investigation you performed for Cedar Crest College in May 2004, including, but not limited to all notes you made, the documents that you obtained, (whether or not they were included in your report), and all correspondence between you and employees or representatives of Cedar Crest College.

See Defendant's Motion to Quash and for Protective Order, at Exh. A. Defendant now seeks to quash this motion on various grounds.

II. DISCUSSION

A court, upon showing of good cause, can grant a motion for a protective order to protect parties and witnesses during the discovery process. Fed. R. Civ. P. 26(c). The burden rests with the moving party to show that there is a good cause for the protective order by showing a "particular need for protection." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986); Davis v. Romney, 55 F.R.D. 337, 340 (E.D. Pa. 1972).

In the case at bar, defendant sets forth four bases on which to quash the subpoena *duces tecum*: (1) relevance; (2) undue annoyance and oppression; (3) attorney-client privilege; and (4) work-product protection. Plaintiff responds that the relevance and undue burden issues are meritless

and that the two privileges either do not apply or have been waived by defendant's actions.

As a preliminary issue, the Court must consider matters of standing. "Generally speaking, a party does not have standing to quash a subpoena served on a third party." Thomas v. Marina Associates, 202 F.R.D. 433, 434 (E.D. Pa. 2001); 9A Federal Practice & Procedure § 2459, at 41 (2d Ed.1995). An exception is made, however, where the party seeks to quash based on claims of privilege relating to the documents being sought. In re Grand Jury, 111 F.3d 1066, 1073 (3d Cir. 1997); Thomas, 202 F.R.D. at 434. The relevant inquiry is whether the subpoena infringes on the movant's legitimate interests. In re Grand Jury, 111 F.3d at 1074. As the work product privilege is designed to prevent disclosure of the attorney's legal theories, research and certain factual material gathered in preparation for proper representation of the client, Hickman v. Taylor, 329 U.S. 495, 508-513, 67 S. Ct. 385 (1947), a client may invoke the privilege to prevent disclosure of the documents. In re Grand Jury Proceedings, 604 F.2d 798, 801 (3d Cir. 1979). Likewise, "[i]t is clear that the attorney-client privilege is one that is owned by the client . . . and that he has standing to appeal an order directed to his attorney that affects the privilege." Id. (internal citations omitted).

In this case, defendant lacks standing to raise issues of either relevance or undue annoyance. The subpoena was issued directly to Wendy Schermer, an independent contractor. Any allegations that the documents sought are irrelevant or unduly burdensome belong solely to Ms. Schermer and may not be asserted by the college on her behalf. With respect to the claims of work-product doctrine and the attorney-client privilege, however, the requested subpoena directly infringes on defendant's legitimate interests. As such, it retains standing to assert these claims.

The question now remains as to whether each of these privileges applies to the information sought and whether, as argued by plaintiff, defendant has waived any protection to which it was

3

entitled. Upon consideration of these two doctrines, the Court finds that defendant has indeed shown good cause for a protective order.

    A.    <u>Attorney-Client Privilege</u>

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981). The Third Circuit enumerated the traditional elements of the attorney-client privilege as follows:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

<u>In re Grand Jury Investigation</u>, 599 F.2d 1224, 1233 (3d Cir. 1979). "[B]ecause the privilege obstructs the search for the truth and because its benefits are, at best, 'indirect and speculative,' it must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" <u>Id.</u> at 1245 (citing 8 <u>Wigmore on Evidence</u> § 2291, at 545 (McNaughton rev. 1961)).

Plaintiff contends that this privilege does not operate here because Ms. Schermer was acting not in her capacity as a lawyer, but rather as an investigator who did not seek to represent the college as an attorney. The Supreme Court, however, teaches that:

> the [attorney-client] privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to

4

>enable him to give sound and informed advice. [citations omitted] The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant.

Upjohn, 449 U.S. at 390. Accordingly, an attorney who investigates complaints and conducts interviews within a company or an organization retains the same entitlement to the attorney-client privilege as if he or she were offering pure legal advice. Id.; Harding v. Dana Transport, Inc., 914 F. Supp. 1084, 1091 (D.N.J. 1996) (investigation of sexual harassment complaints in a company by an attorney falls within the purview of attorney activity).

Wendy Schermer is an attorney who engages in the practice of employment law. Although her role appeared to be primarily one of investigation with respect to Dr. Simon's complaints, she also acted as a consultant with regards to the veracity of the complaint. Certainly, her legal expertise was a primary factor in the college's decision to hire her. Accordingly, the Court finds that any communications between Ms. Schermer and the college are shielded by the attorney-client privilege.

The sole remaining argument by plaintiff with regard to the attorney-client doctrine contends that the College has waived the privilege by its actions. Plaintiff previously made a request for Ms. Schermer's final report issued upon conclusion of the investigation. Defendant provided that report with no claim of privilege. Plaintiff now contends that the disclosure of this report waived the attorney-client protection as to the underlying notes, documentation and communication sought in the subpoena *duces tecum*.

All courts which have addressed the question agree that once a party discloses information protected by the attorney-client privilege to an outside party, the privilege is destroyed. United States v. Rockwell International, 897 F.2d 1255, 1265 (3d Cir.1990). The Third Circuit, however, has

recognized two distinct types of limited waiver: partial and selective. Westinghouse v. Republic of the Philippines, 951 F.2d 1414, 1423 n. 7 (3d Cir.1991). Partial waiver "permits a client who has disclosed a portion of privileged communications to continue asserting the privilege as to the remaining portions of the same communications." Id. The concept of partial waiver, though, remains subservient to subject matter considerations, which ask what else, in "fairness" under the circumstances, should be disclosed. Id. Under this fairness doctrine,

> regard must be had to the double elements that are predicated in every waiver, i.e., not only the element of implied intention, but also the element of fairness and consistency. A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.

Harding, 914 F. Supp. at 1092 (quoting 8 J. Wigmore, Evidence in Trials at Common Law § 2327).

Plaintiff relies on the case of Harding v. Dana Transport, Inc., 914 F. Supp. 1084 (D.N.J. 1996) to argue that partial disclosure of an investigation regarding a sexual harassment claim waives the attorney-client privilege as to the substance of that investigation. This case, however, is inapposite. The defendant, in that matter, hired an attorney to investigate the plaintiff's sexual harassment claims and then utilized the results of the investigation to form a defense strategy with regard to plaintiff's administrative complaints. Id. at 1088. Significantly, part of the defendant's defense strategy included reliance on the reasonableness of its actions and investigations in response to plaintiffs' charges, thus exonerating it from Title VII liability. Id. The court held that defendant could not base its defense to claims against it upon the mere fact of an investigation while prohibiting plaintiff from inquiring into the reasonableness of that investigation to challenge the

defense. Id. at 1096.

In the case at bar, however, the same fairness concerns are clearly not at issue. The investigation was performed by Ms. Schermer with regards to the workplace harassment claims by Dr. Simon, who is not a party to this litigation. Nor has defendant made any offensive or tactical use of the report or investigation with regards to plaintiff's sexual harassment/gender discrimination claims. Certainly, then, the mere disclosure of the report thus does not effect a waiver of related privileged matters such as her notes and communications with defendant. Defendant is thus entitled to a protective order regarding any requested communications between itself and its attorney Wendy Schermer.

      B.      Work-Product Doctrine

In a corollary argument, defendant alleges that all the remaining materials requested in the subpoena are shielded from discovery by the work-product doctrine. Plaintiff again disputes the applicability of this doctrine.

The concept of work product protection is set forth in Federal Rule of Civil Procedure 26(b)(3), which states:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or buy or for that other party's representatives (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Rule 26(b)(3). To establish that the work product doctrine applies, the party opposing discovery must show, *inter alia,* that the work product it seeks to protect was "prepared or obtained because of the prospect of litigation." In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 803 (3d Cir.1979) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 198 (1970)). The adverse party may obtain discovery of work product materials only upon a showing of "substantial need" and by establishing that the seeking party cannot otherwise obtain the substantial equivalent of such materials without undue hardship. See Fed. R. Civ. P. 26(b)(3). Notwithstanding that provision, the rule grants almost absolute protection against discovery of opinion "work product," consisting of "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Id.

In the matter at hand, Ms. Schermer's notes and documents are unequivocally protected work product. Acting in anticipation of litigation with Ms. Simon, defendant hired Ms. Schermer as its agent to undertake a full investigation of Ms. Schermer's complaints.[1] Despite his efforts to overcome this protection, plaintiff has not established the requisite substantial need. Indeed, plaintiff has at his disposal a 43-page report of the investigation, coupled with sixteen attached exhibits. Armed with this report, plaintiff may easily conduct his own research into the substance of Ms. Schermer's investigation by interviewing the same witnesses or specifically requesting particular documents from defendant. See Upjohn, 449 U.S. at 395-396 (the work product doctrine does not protect against underlying facts); see also In re Commercial Financial Services, Inc., 247 B.R. 828, 852 (Bankr. N.D. Okla 2000) ("[a]n adversary seeking to discovery alleged wrongdoing is not

---

[1] Rule 26(b)(3) of the Federal Rules of Civil Procedures defines a "representative" expansively, permitting a "consultant, surety, indemnitor, insurer, or agent" to assert the privilege.

precluded from making its *own investigation* of the facts by deposing employees, requesting documents, etc.  An adversary may not, however, demand and make use of the fruits of the corporation attorney's own investigation.") (emphasis in original).

In a last ditch effort to preserve the integrity of its subpoena, plaintiff again raises the issue of waiver.  The Third Circuit has held that to waive the protection of the work-product doctrine, the disclosure must "enable an adversary to gain access to the information."  Westinghouse Electric Corp. v. Republic of the Philippines, 951 F.2d 1414, 1428 (3d Cir.1991).  Thus, while a client's disclosure of confidential communications to a third party waives the attorney-client privilege, it does not necessarily waive the protection of the work-product doctrine.  Id.  Rather, waiver of the work product doctrine is dependant upon the specific factual circumstances of the case.  United States v. Nobles, 422 U.S. 225, 240 n. 14, 95 S. Ct. 2160, 2171 n. 14 (1975).  "[C]ourts generally find a waiver only if facts relevant to a particular, narrow subject matter are at issue and have been disclosed under circumstances where it would be unfair to deny the other party an opportunity to discover other facts relevant to that subject matter."  Thorn Emi North America, Inc. v. Micron Technology, Inc., 837 F. Supp. 616, 621 (D. Del.1993); see also Kraemer v. Franklin & Marshall College, Civ. A. No. 95-0020, 1995 WL 447634, *3 (E.D. Pa. July 27, 1995) (notes of counsel's interviews with employees in connection with Title VII case were not waived by the disclosure of the substance of the interviews by the interviewees); In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir.1982) ("The purposes of the work product privilege . . . are not inconsistent with selective disclosure-even in some circumstances to an adversary." ).

In the case before us, defendant disclosed only Ms. Schermer's investigative report, thus waiving any work-product protection as to that report.  Although involving the same subject matter,

9

Ms. Schermer's underlying notes, communications to the college and documentary compilations undoubtedly constitute clear attorney work-product. The simple fact that defendant was willing to share the report of an investigation involving a third party neither enabled plaintiff to gain access to that underlying information nor put the subject matter of that report at issue. See, e.g., Commercial Financial, 247 B.R. at 852 (mere disclosure of investigative report did not waive protection of counsel's interview notes, memos, research, selection and arrangement of documents, investigation strategies, personal recollections, etc.). Accordingly, we decline to find the privilege waived.

Therefore, I make the following:

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW SCOTT ZINER, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CEDAR CREST COLLEGE, | : | |
| | : | NO. 04-3491 |
| Defendant. | : | |

ORDER

AND NOW, this 30th day of *May*, 2006, upon consideration of Defendant's Motion to Quash/Motion for Protective Order and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED and the subpoena dated March 10, 2006, issued to Wendy Schermer is hereby QUASHED.

It is so ORDERED.

BY THE COURT:


/s/ Charles B. Smith
CHARLES B. SMITH
CHIEF UNITED STATES MAGISTRATE JUDGE