IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW SCOTT ZINER, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| CEDAR CREST COLLEGE : | |
| : | NO.  04-3491 |
| Defendant. : | |

<u>MEMORANDUM AND ORDER</u>

Defendant Cedar Crest College (the "College") currently moves for partial judgment on the pleadings, under Federal Rule of Civil Procedure 12(b)(6), pertaining to new allegations in Plaintiff Andrew Scott Ziner's First Amended Complaint.  Finding no basis for such relief, the Court will deny this motion.

I.  FACTUAL AND PROCEDURAL BACKGROUND

The Complaint at issue in this case is replete with claims of gender discrimination by plaintiff against his employer, Cedar Crest College, in violation of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, the Equal Pay Act and a standard breach of contract theory.  By way of a lengthy pleading, plaintiff specifically details how upper level administration at the College repeatedly engaged in various discriminatory acts against him resulting in a hostile work environment, a disparity in pay with his female counterparts and a loss of promotion opportunities.

On July 31, 2003, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  He obtained his right to sue letter from the EEOC on April 29, 2004 and thereafter, on July 23, 2004,

submitted his initial complaint to this Court. After obtaining judicial leave, plaintiff then filed a First Amended Complaint on March 15, 2006, detailing new allegations that occurred after the issuance of the right to sue letter. These allegations specifically describe an incident occurring in a College Life class, run by Professor Maynard Cressman, Assistant Athletic Director Dan Donohue and teaching assistant Dina Angstadt, wherein the class was informed that everyone was going to participate in a "fun stress reliever." Amended Complaint at ¶¶ 57-59. After Mr. Cressman left the room, the class was told that the game's objective was to throw a marshmallow at the blackboard and shout something that causes great stress. Id. at ¶ 59. One at a time, two students who are Mr. Cressman's advisees, said "sociology" as their stressor when they threw their marshmallows. Id. at ¶ 60. Ms. Angstadt allowed a student to add a caricature of plaintiff to the board. Id. at ¶ 61. With that drawing in full view, derogatory statements and thoughts about plaintiff were shouted by the two students and both college employees. Id. at ¶¶ 62-65.

Upon learning of the incident, plaintiff initiated a grievance procedure under the faculty handbook against Professor Cressman, Dan Donohue and Dina Angstadt. Id. at ¶ 66. On December 23, 2005, plaintiff met with Faculty Grievance Committee members to discuss his complaint. These members apparently indicated that both Ms. Angstadt and Mr. Donohue would be treated as faculty members for purposes of the Committee's jurisdiction. Id. at ¶¶ 67-68. Nonetheless, the FGC never acted properly on this complaint and, in fact, passed him off to the Dean of Students who likewise failed to act. Id. at ¶¶ 69-73. When plaintiff pursued his complaint to both the Provost and the College President, his requests for intervention were denied. Id. at ¶¶ 74-77. Plaintiff now contends that the College's treatment of the incident further contributed to the hostile working environment. Id. at ¶¶ 77-78.

On April 3, 2006, defendant filed a Motion for Judgment on the Pleadings to dismiss these new allegations. Its argument is two-fold. First, it contends that although plaintiff was required to exhaust his administrative remedies before maintaining a civil suit, plaintiff neither filed an administrative complaint nor obtained a right to sue letter pertaining to the latest allegations. Second, defendant avers that plaintiff's allegations fail to show either that he suffered an adverse employment action or that he was subject to gender discrimination.

II.    STANDARD OF REVIEW

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the legal sufficiency of a complaint. Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Under Rule 12(b)(6), a defendant bears the burden of demonstrating that plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion to dismiss, the court must "accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The question before the court is not whether the plaintiff will ultimately prevail. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). Rather, the court should only grant a 12(b)(6) motion if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). Notably, an employment discrimination complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief" under Fed. Rule Civ. Proc. 8(a)(2). Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508, 122 S. Ct. 992, 995 (2002). Defendants attempting to dismiss a claim for failure to exhaust administrative remedies should file a motion pursuant to Rule 12(b)(6).

Richards v. Foulke Associates, Inc., 151 F. Supp.2d 610, 612 (E.D. Pa. 2001).

III.    LEGAL DISCUSSION

    A.    Failure to Exhaust Administrative Remedies

In its primary challenge to plaintiff's Amended Complaint, defendant contends that under Pennsylvania and federal law, a plaintiff must exhaust his administrative remedies before bringing a civil suit. As to his latest allegations arising from the "College Life" class incident, however, plaintiff did not obtain a right to sue letter. As these additional allegations do not fall within the scope of the prior EEOC complaint, defendant contends that the EEOC was denied the opportunity to investigate them.

Both Title VII and the PHRA require plaintiffs to exhaust the administrative process prior to bringing suit. 42 U.S.C. 2000e-5(f)(1); 43 Pa.C.S.A. § 962(c); Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 469 (3d Cir. 2001). "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996). "Where discriminatory actions continue after the filing of an EEOC complaint, however, the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and re-starting the 180 day waiting period." Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). Thus, "[t]he relevant test in determining whether appellant was required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Id.

Pertaining to a claim of a hostile work environment, the Third Circuit has adopted a "totality of circumstances" approach to ascertain whether specific instances of harassment are relevant to

4

prove the existence of a hostile work environment. West v. Philadelphia Elec. Co., 45 F.3d 744, 756 (3d Cir. 1995). In doing so, it recognized that "[b]ecause a hostile work environment claim is a single cause of action, rather than a sum of discrete claims, each to be judged independently, the focus is the work atmosphere as a whole." Id. at 756.

Although West dealt specifically with the admission of evidence at trial, as opposed to exhaustion of administrative remedies, its logic is equally applicable to the case before us. Plaintiff claimed, in his charge of discrimination as filed with the PHRC and the EEOC, that he was subjected to a "hostile work environment" by the college on the basis of his gender, and that it was a continuing violation.[1] The EEOC had a full opportunity to investigate this allegation. Thereafter, his initial federal complaint, Counts I and IV, alleged that he was subject to harassment based on his gender and that the harassment "was unwelcome and was sufficiently pervasive or severe to affect a term, condition or privilege of [his] employment." Complaint at ¶¶ 61-62, 74-75. Plaintiff's new allegations in his First Amended Complaint assert nothing more than an additional incident contributing to this overall pattern of harassment by the college. He has not brought any new cause of action. See King v. M.R. Brown, Inc., 911 F. Supp. 161, 166 (E.D. Pa. 1995) ("plaintiff's 'new' allegations of a hostile work environment at [defendant's place of employment] merely buttress her original claim of hostile work environment, which she properly raised with the EEOC and of which [defendant] was clearly on notice."). In light of the prevailing jurisprudence on this issue, the Court

---

[1] Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment." Anjelino v. New York Times, 200 F.3d 73, 88 (3d Cir. 1999). Where, however, a defendant brings a Rule 12(b)(6) motion for failure to exhaust administrative remedies, the court may consider administrative filings, such as the record of the case before the EEOC, without converting the motion to dismiss into a motion for summary judgment. Tlush v. Manufacturers Resource Center, 315 F.Supp.2d 650, 654 (E.D. Pa. 2002) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993)).

5

will not require that he separately exhaust his administrative remedies for these allegations.

### 2. Failure to State a Claim

By way of its second argument defendant contends that even assuming all of plaintiff's new allegations in its Amended Complaint were true, plaintiff fails to sustain a *prima facie* case for gender discrimination on two grounds. First, it claims that plaintiff has failed to allege either that he suffered an adverse employment action that in any way affects his compensation, terms, conditions or privileges of employment. Secondly, it avers that plaintiff has not shown that anyone, including females or female professors, have been treated differently when they brought a grievance procedure against faculty, staff or students.

With respect to the first assertion, defendant's argument stands on tenuous grounds. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As the U.S. Supreme Court made clear in Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S. Ct. 2399 (1986), this language "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women in employment,' which includes requiring people to work in a discriminatorily hostile or abusive environment." Id., at 64 (quoting Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 707, n. 13, 98 S.Ct. 1370, 1374 (1978) (some internal quotation marks omitted). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment,' Title VII is violated. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (internal quotations omitted). "[T]he very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality." Id. at 22.

Plaintiff's new allegations detail a failure by the college to act on a complaint by one of its faculty members. Standing alone, such an incident would not amount to a hostile work environment. Considered in the totality of the circumstances, however, this incident could be viewed as contributing to the overarching pattern of harassment described by plaintiff. Such a claim is sufficient to satisfy Title VII's pleading requirement.

Defendant's second argument that plaintiff fails to show gender discrimination is likewise misplaced. "Title VII applies to both 'facially neutral mistreatment . . . [and] overt [ethnic] discrimination . . . [which] in sum constitute[] the hostile work environment.'" Cardenas v. Massey, 269 F.3d 251, 261 (3d Cir. 2001) (quoting Durham Life Ins. Co. v. Evans, 166 F.3d 139, 148 (3d Cir. 1999)). Indeed, the Third Circuit has recognized that "the advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment claim." Id.

In this case, plaintiff has alleged that he was consistently treated differently at the college because he was a male. The newest allegations contend that the college declined to conduct and adequate investigation into the "College Life" class incident, thereby contributing to the hostile environment in which he was required to work. Taking these allegations as true, as we are required to do, plaintiff could possibly prove discrimination arising from what, on its face, appears to be a

7

case of neutral mistreatment. Certainly at this juncture, and without further development of the facts, it would be premature to dismiss these claims.[2] As such, the Court denies defendant's Motion for Judgment on the Pleadings.

An appropriate order follows:

---

[2] Notably, defendant's reply brief attempts to cite to two matters outside the pleadings to support its motion. Generally, if matters outside the pleadings are presented on a motion under Rules 12(b)(6) and the court does not exclude them, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles. Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir.1992). Although a district court has the discretion to convert a motion to dismiss to a motion for summary judgment, id., the court must provide notice of its intention to consider the motion under Rule 56 of the Federal Rules of Civil Procedure. Rose v. Bartle, 871 F.2d 331, 342 (3d Cir.1989). In this case, the Court has not given such notice to the parties and, in light of the ongoing discovery, declines to convert the motion into one for summary judgment. In turn, we shall not consider the two matters outside the pleadings raised by defendant.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW SCOTT ZINER, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| CEDAR CREST COLLEGE : | |
| : | NO.  04-3491 |
| Defendant. : | |

## ORDER

AND NOW, this   30th       day of *May*, 2006, upon consideration of Defendant's Motion for Judgment on the Pleadings to the First Amended Complaint, Plaintiff's Response thereto and the  Reply briefs filed by both parties, it is hereby ORDERED that the Motion is DENIED.

It is so ORDERED.

BY THE COURT:


/s/Charles B. Smith
CHARLES B. SMITH
CHIEF UNITED STATES MAGISTRATE JUDGE